Application of Charles E. SMITH for Appointment of Counsel.

No. 77-3061A.

United States District Court, D. Kansas.

June 16, 1977.

2. The carrier does not seem to contend that they constitute a significant proportion of the total.

Charles E. Smith, pro se.

E. Edward Johnson, U. S. Atty., Mary Briscoe, Asst. U. S. Atty., Topeka, Kan., for The Bureau of Prisons.

## MEMORANDUM AND ORDER

STANLEY, Senior District Judge.

The applicant, Charles E. Smith, has requested under the provisions of 18 U.S.C.A. § 4214(a)(2)(B) that counsel be appointed to represent him at a pending dispositional review hearing. The application is submitted on CJA Form 22 (9/76)—"Statement of Parolee or Mandatory Releasee Concerning Appointment of Counsel under the Criminal Justice Act". The form, supplied to Smith by the United States Parole Commission, contains a statement of his understanding that not only may he apply to the court for appointment of counsel but "that such representation by counsel *will* be furnished . . . if the judicial officer determines I am financially unable to obtain representation". (Emphasis supplied.) He was instructed by the Commission to send the completed form to this court. As submitted to the court it was unaccompanied by any documents or information as to the circumstances surrounding the initiation of revocation proceedings against him or evidence of Smith's status other than that he was an inmate of the Kansas State Penitentiary. The court ordered that no action be taken on the application until the Commission had supplied the court with a copy of the warrant application together with all supporting documents which led to the initiation of revocation proceedings. This the Commission has done. The applicant, with the assistance of Mr. Scott D. Hess, Student Counsel, Kansas Defender Project, has filed a well-reasoned memorandum in support of his application.

The court, having examined all of the material submitted finds:

1. Smith, then serving a sentence for the crime of bank robbery was on February 1, 1973, released on parole from the United States Penitentiary, McNeil Island, Washington, with 2,203 days remaining to be served. The certificate of parole was endorsed "Parole to the physical custody of detaining authorities only". Following incarceration in the Washington State Penitentiary Smith was paroled from that institution, apparently in March 1974.

2. On May 16, 1974 a federal parole violator's warrant was issued predicated on an indictment returned in the United States District Court for the Western District of Washington charging Smith with bank robbery. This indictment was dismissed on September 25, 1975 at which time Smith was serving consecutive sentences of not less than fifteen years to life imprisonment and not less than five years to life imprisonment imposed November 8, 1974 by the District Court of Sedgwick County, Kansas, after his conviction by a jury on two counts of aggravated robbery. The sentences were to run concurrently with "the sentences imposed by the United States District Court for the Western District of Washington, in the case of *United States v. Charles Edward Smith*, Case No. 51686 and *United States v. Charles Edward Smith*, Case No. 51681". The cases mentioned presumably are those resulting in the sentences from which Smith was released on parole on February 1, 1973.

3. On March 11, 1976 Smith was sentenced by this court to a term of five years with eligibility for parole under the provisions of 18 U.S.C.A. § 4208(a)(2), following a plea of guilty of the interstate transportation of a stolen motor vehicle. The sentence was to run consecutively to any sentences theretofore imposed.

4. In a document captioned "Summary by Case Analyst. Disposition Review" prepared February 18, 1977 by an examiner of

the United States Parole ˋɔmmission, it is disclosed that prior to hˊ federal parole Smith had been convicted of at least three felonies. The summary contains a statement of the examiner that "subject is a consistent law violator—has criminal record of robberies short time on parole prior to violation".

5. The warrant application leading to the issuance of the parole violation warrant, with supplements thereto, contains the following charges:

"1. *BANK ROBBERY*—On or about May 1, 1974, Charles Edward Smith was charged by federal authorities, Western District of Washington, with the above offense, relative to the April 24, 1974 armed robbery of the State Mutual Savings Bank, Seattle. Details reveal that a warrant was issued for Mr. Smith's arrest on May 1, 1974, based on a positive photo identification of Mr. Smith by bank employees, per PO Mills' report dated May 2, 1974. Mr. Smith's whereabouts is unknown.

"2. *UNAUTHORIZED POSSESSION OF A FIREARM*—On or about April 24, 1974 Smith, with the use of a handgun, robbed the State Mutual Savings Bank, Seattle, Washington, of approximately $4,623. He had neither Board nor U.S. Probation Officer's permission to possess a firearm of any type, per PO Mills' report dated May 2, 1974 with attached Complaint of the U. S. District Court, Western District of Washington Magistrate's Docket No. 74 and Case No. 260. Mr. Smith's whereabouts is unknown.

"*SUPPLEMENTAL*

"1. *FAILURE TO SUBMIT MONTHLY SUPERVISION REPORTS* From on or about May 3, 1974 to on or about June 3, 1974 subject failed to submit supervision report for the month of April, 1974 and May, 1974 according to United States Probation Officer Mills in letter dated June 12, 1974.

"2. *LEAVING THE DISTRICT WITHOUT PERMISSION* On June 12, 1974, United States Probation Officer Mills in the Western District of Washington was advised that subject was arrested by the Wichita Kansas Police Department. Subject did not have permission to be outside his parole district which is the Western District of Washington according to United States Probation Officer Mills in his letter dated June 12, 1974.

"*SUPPLEMENTAL*

"3. *INTERSTATE TRANSPORTATION OF A STOLEN MOTOR VEHICLE* (18 U.S.C. 2312): On 3/11/76, subject pled guilty to the above offense in U. S. District Court, District of Kansas according to copy of the Judgment and Commitment Order dated 3/11/76."

From the undisputed recitals of the submitted documents the court finds that Smith is a 4-time convicted felon who has amply demonstrated that his release from custody would "jeopardize the public welfare" (18 U.S.C.A. § 4206(a)) and probably, if released from custody, would endanger the lives of law abiding citizens and constitute a danger to himself and others. 18 U.S.C.A. § 4214(a)(1).

■ Although CJA Form 22 (9/76) contains the assurance that the appointment of counsel is mandatory upon a mere showing of financial inability to obtain attorney representation this court cannot accept the proposition implied in the language of the form that the court has no discretion in the matter of appointment of counsel to represent an indigent person subject to parole revocation.

The Director of the Administrative Office of the United States Courts has furnished the court with copies of correspondence in which the staff of the Administrative Office and the Attorney General of the United States have expressed the opinion that the provisions of 18 U.S.C.A. § 4214(a)(2)(B) mandates the appointment of counsel to represent *all* indigent persons subject to

revocation of parole. The opinions are based upon the writers' conclusions that the statute is ambiguous in its terms thus compelling resort to legislative history to determine the intent of Congress (letter from the Director of the Administrative Office to the Comptroller General of the United States August 18, 1976; letter from the Attorney General to the Assistant General Counsel, United States General Accounting Office, date illegible). Although agreeing that statements on the floor of the House of Representatives were not entirely clear, the Attorney General relied upon "a copy of the agenda for the conference of the PCRA" (the Parole Commission and Reorganization Act) and upon informal advice of staff counsel for both the Senate and House subcommittees "that mandatory appointment of counsel was intended by the conferees and was, in fact, a matter of debate and compromise in the conference committee."

One is reminded of a statement once made by someone that in construing a statute, when the legislative history is unclear, resort must be had to the statute itself. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 412, 91 S.Ct. 814, 28 L.Ed.2d 136.

In a memorandum from the Chairman of the United States Parole Commission to the Attorney General dated September 7, 1976 the view was expressed that "all appointments of counsel provided for indigents under the Act are to be made in accordance with the Criminal Justice Act's standard that the court must find that the interests of justice require such appointment." And that "appointments of counsel in these cases were intended to be made under the Criminal Justice Act on a discretionary basis with compensation to be made under that Act." This court is in agreement with that view and concludes that the language of 18 U.S.C.A. § 4214(a)(2)(B) is clear and unambiguous and that there is no need for resort to legislative history.

Section 4214(a)(2)(B) provides that counsel shall be appointed to represent an indigent person subject to revocation of parole and that such appointment shall be made

"pursuant to section 3006A". The term "pursuant to" means "in accordance with". The language of subsection (g) of 18 U.S.C.A. § 3006A provides for the appointment of counsel for a person subject to revocation of parole only "whenever the United States magistrate or the court determines that the interests of justice so require".

In the case of *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656, the Supreme Court recognized that the facts and circumstances in parole revocation hearings are susceptible of almost infinite variation, and that a considerable discretion must be allowed the responsible agency in making the decision as to whether counsel should be appointed. In the same opinion at page 791, 93 S.Ct. at page 1764, the Court stated that the parolee's admission to having committed another serious crime "creates the very sort of situation in which counsel need not ordinarily be provided". See also *Cotner v. United States*, 409 F.2d 853 (10th Cir. 1969); *Coronado v. United States Board of Parole*, 551 F.2d 275 (10th Cir. 1977).

■ If this court believed the statute to be ambiguous, making it necessary to examine the legislative history to determine the intent of Congress, it would keep in mind that "we must put ourselves in the place of a majority of congressmen and act according to the impression we think this history should have made on them." *United States v. Pub. Util. Comm'n.*, 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020, (Mr. Justice Jackson's concurring opinion at p. 319, 73 S.Ct. at p. 719), and would not "extrapolate meaning from surmises and speculation and free-wheeling utterances, . . . in disregard of the terms in which Congress has chosen to express its purpose." (Mr. Justice Frankfurter's separate opinion at p. 321, 73 S.Ct. at p. 720.) As in *United States v. Pub. Util. Comm'n.*, the legislative history here is "more vague than the statute we are called upon to interpret." 345 U.S. 295, 320, 73 S.Ct. 706, 720, 97 L.Ed. 1020.

Nor would this court attribute to Congress a ridiculous result. Passing the matter of the considerable expense to the public